IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
------------------------------------------------------   :
                                                         : CASE NO.  1:10 CV 01130
LEIGH-ANNE FORD, individually an as                      :
class representative,                                    :
                                                         : MEMORANDUM OPINION AND
                                        Plaintiff,       : ORDER
                                                         :
                 -vs-                                    :
                                                         :
                                                         :
NEW CENTURY MORTGAGE                                     :
CORPORATION, et al,                                      
                                     Defendants.         
------------------------------------------------------   
```

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court is a motion for judgment on the pleadings filed by the defendant Geauga Savings Bank ("Geauga Savings"). The plaintiff Leigh-Anne Ford has responded, and Geauga Savings has replied. For the following reasons, the Court will grant the motion.

**I. Background**

The plaintiff's class action complaint against defendants New Century Mortgage Corporation ("New Century") and Geauga Savings Bank was removed from Cuyahoga Court of Common Pleas on 19 May 2010. The plaintiff alleges violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602(f) and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq. (Doc. 1-2, hereinafter "Compl.," Counts 1-3, 7).  She further alleges claims of negligent and intentional misrepresentation; breach of

contract; and fraudulent misrepresentation. (Compl. Counts 4-6). Geauga Savings filed an answer and counter-claims on 18 June 2010. (Doc. 5, hereinafter, "Ans."). Geauga Savings filed a motion for judgment on the pleadings on 29 July 2010. (Doc. 8). A response and a reply followed on 28 September and 15 October 2010, respectively. (Doc. 10; Doc. 11).

The following factual allegations are derived from the pleadings and the documents attached thereto. Ms. Ford alleges, and the defendant admits, that Geauga Savings originated and serviced loans for her. (Compl. ¶12; Ans. ¶¶3,12). The complaint does not identify the particular loans at issue, but Geauga Savings states that there are four loans, which Ms. Ford does not dispute. (Ans. ¶3). The first loan, in the amount of $37,700, was extended to Ms. Ford on 5 January 2007 for the purchase of property located at 12914 Hlavin Avenue, Cleveland, Ohio ("the Hlavin Property"). (Ans. ¶3; Doc. 5-1, "Adjustable Rate Note"; Doc. 5-2, "Mortgage Agreement").   With respect to this loan, Geauga Savings states that Ms. Ford represented that the Hlavin Property was to be her primary residence.  (Doc. 5-3, "Uniform Residential Loan Application," p. 2).  Geauga Savings contends that Ms. Ford never intended nor did she ever reside at the Hlavin Property. (Ans. ¶3).

Geauga Savings states that the second loan, a line of credit in the amount of $13,300, was extended to Ms. Ford on 8 May 2007 for improvements to the Hlavin Property. (Ans. ¶3; Doc. 5-4, Home Equity Line Agreement; Doc. 5-5, Open End Mortgage Deed). Geauga Savings states that a condition of this agreement was that the Hlavin Property be Ms. Ford's primary residence. (Ans. ¶3). Ms. Ford concedes that

2

the purpose of the first two loans was the purchase of a secondary residence. (Doc. 10 at 4).

Geauga Savings further states that it extended a third loan to Ms. Ford, this time a construction loan, in the amount of $57,000 on 14 May 2007. (Ans. ¶3; Doc. 5-7, Adjustable Rate Note dated 14 May 2007; Doc. 5-8, Mortgage Agreement dated 14 May 2007). The fourth loan was a construction loan for another property located at 9212 Columbia Avenue, Cleveland, Ohio, in the amount of $60,000. (Ans. ¶3; Doc. 5-9; Doc. 5-10).

Ms. Ford alleges that in the course of originating and servicing her loans, the defendants, individually and collectively, engaged in unlawful, deceptive, and unconscionable practices, which are described as follows. (Compl. ¶69). The defendants failed to promptly post Ms. Ford's timely payments and assessed her unwarranted late charges. (Compl. ¶70). The defendants charged more than one late fee for a single delinquency and otherwise "pyramided" late charges. (Compl. ¶71). The defendants posted Ms. Ford's payments as partial payments to "suspense accounts." (Compl. ¶72). Ms. Ford was charged fees called "corporate advances." (Compl. ¶73). The defendants charged or attempted to charge Ms. Ford illegal fees as a condition to reinstatement of her purportedly defaulted mortgage. (Compl. ¶74). The defendants, in some cases, force-placed insurance on the plaintiff, which was either unnecessary or purchased at exorbitant premiums. (Compl. ¶75). The defendants charged interest on sums they claimed to have advanced on behalf of Ms. Ford. (Compl. ¶76). The defendants engaged in abusive debt collection practices. (Compl.

3

¶77). The defendants were deceptive when they included a deed in lieu of foreclosure within the loan modification package they presented to Ms. Ford. (Compl. ¶78).

Further, Ms. Ford signed a waiver to her right to jury trial, which she maintains is invalid, having been obtained through the defendants' deceptive practices.  (Compl. ¶79). The defendants subjected Ms. Ford to numerous harassing contacts.  (Compl. ¶79). The defendants failed to promptly verify amounts due, failed to resolve disputes, and failed to make required disclosures in connection with their debt collection activities. (Compl. ¶80).

**II. Standard of Review**

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 549 (6th Cir.2008). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." Golden v. City of Columbus, 404 F.3d 950, 958-59 (6th Cir.2005). The Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield, 552 F.3d 430, 434 (6th Cir.2008); Murphy v. Sofamor Danek Gp., Inc., 123 F.3d 394, 400 (6th Cir.1997). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. Ashcroft v. Iqbal, --- U.S. ----, ----,

4

129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. Allard v. Weitzman, 991 F.2d 1236, 1240 (6th Cir.1993). The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" Nader v. Blackwell, 545 F.3d 459, 470 (6th Cir.2008) (quoting Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 544, 127 S.Ct. at 1964. A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." Iqbal, 129 S.Ct. at 1950 (citing Twombly, 550 U.S at 556).

## III. Discussion

### A. Truth in Lending Act (Count 1)

In Count One of her complaint, Ms. Ford alleges that the defendants violated TILA by failing to provide required disclosures and notices related to her loans, thereby giving her the right to rescind.  Geauga Savings maintains that she is not entitled to recission because none of the loans involve a security interest in her principal dwelling.

A consumer's right to unilaterally rescind under TILA applies only to credit transactions "in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a) (emphasis added). See also Beach v. Ocwen Federal

5

Bank, 523 U.S. 410, 411(1998) ("when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately").

The complaint states that each of the loans at issue are "transactions in which a security interest was taken in the Representative Plaintiff's principal residence." (Doc. 1-2, ¶86). Although the Court must accept all well-pleaded factual allegations in the complaint as true, it "may disregard allegations contradicted by facts established by exhibits and attached to the pleading." Girgis v. Countrywide Home Loans, Inc., 733 F.Supp.2d 835, 843 (N.D.Ohio,2010) (quoting HMS Property Mgmt. Group Inc. v. Miller, 69 F.3d 537 (Table), 1995 WL 641308 at *3 (6th Cir. Oct. 31, 1995)).  Id. Further, deliberate factual assertions made in the parties' briefs may be considered binding judicial admissions. United States v. Burns, 109 Fed. Appx. 52, 58 (6th Cir.2004) (citations omitted).

Despite the allegation in the complaint, review of the available materials reveals that none of the loan transactions presently at issue relate to a security interest in Ms. Ford's principal dwelling. First, in her opposition, she admits that "[t]he parties' understanding with respect to the First and Second Loans . . . indicates that the purpose for each of the subject loans was the purchase of a secondary residence." Because this statement is deliberate and clear, the Court will hold her to it. See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 336 (6th Cir.2007). Further, the loan documents attached to the pleadings reveal, and Ms. Ford concedes, that the second two loans were secured for business purposes. (Doc. 10, p. 4; Docs. 5-

6

7. 5-8, 5-9, 5-10). Therefore, because the loan transactions do not relate to a security interest in Ms. Ford's principal dwelling, recission is not a remedy available to her in this instance.

To the extent that Ms. Ford seeks damages under TILA, her claim is time-barred. A damages claim under TILA is subject to a one year statute of limitations. 15 U.S.C. § 1640(e). The statute of limitations begins running on the date of the occurrence of the violation, that is, "when lender and borrower contract for the extension of credit." Wachtel v. West, 476 F.2d 1062, 1065 (6th Cir.1973). In the present case, it is undisputed that the loans transactions occurred in 2007. Ms. Ford filed her complaint in 2010, well outside the limitations period.

Ms. Ford acknowledges her tardiness but argues that equitable tolling should save her claim. An untimely claim can survive where "inequitable circumstances prevent[ed] [the plaintiff] from suing before the statutory period [ran]." Mills v. Equicredit Corp., 294 F.Supp.2d 903, 908 (E.D.Mich.2003). The plaintiff has the burden to show "'(1) that [s]he has been pursuing her rights diligently, and (2) that some extraordinary circumstance stood in [her] way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 335 (2007)(quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Equitable tolling is "available only in compelling circumstances which justify a departure from established procedures." Puckett v. Tennessee Eastman Co., 889 F.2d 1481, 1488 (6th Cir.1989).

Ms. Ford's case does not present circumstances so compelling that equitable tolling should apply. The allegation that "the [d]efendant engaged in a course of conduct in which the [d]efendant fraudulently misrepresented loan terms and charges

7

throughout the origination and servicing of the loans," falls short of meeting the standard. Ms. Ford does not describe diligently pursuing her rights, and she does not convincingly argue that an extraordinary circumstance prevented timely filing. Ms. Ford has not met her burden to show that equitable tolling is appropriate in this instance. Therefore, because she filed outside the limitations period, Ms. Ford fails to state a TILA damages claim upon which relief can be granted.

### B. Counts 2, 3, and 7: Real Estate Settlement Procedures Act

### 1. 12 U.S.C. § 2607 (Counts 2 & 7)

In counts two and seven, Ms. Ford alleges that the defendants violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607, when they "individually and collectively, accepted fees for providing real estate settlement services when in fact those fees were for charges unrelated to real estate settlement services."[1] (Doc. 1-2, ¶¶94, 116). Geauga Savings maintains that these claims are also time-barred.

A plaintiff may bring a claim under Section 2607 within one year from the date of the occurrence of the violation. See 12 U.S.C. § 2614. A RESPA violation occurs when the loan closing takes place. Meyers v. ABN Amro. Mortgage Group, Inc., 2005 WL 2396991 at *2 (E.D.Mich. Sept. 28, 2005) (citing Snow v. Title Ins. Co., 332 F.3d 356, 359 (5th Cir.2003)). The loan transactions in this case were executed in 2007, and Ms. Ford filed her complaint in 2010, outside the limitations period. For the same reasons discussed above, Ms. Ford has not convincingly argued that equitable tolling

---

[1]     Count seven is entitled "RESPA Servicing Violations," but the substantive allegations contained therein are indistinguishable from those in count two. Counts two and seven are accordingly considered one and the same for the purposes of this analysis.

8

should save her Section 2607 RESPA claim.[2] Therefore, because she filed outside the limitations period, she does not present a plausible claim for relief pursuant to 12 U.S.C. § 2607.

### 2. 12 U.S.C. § 2605 (Count 3)

Count three of the complaint alleges RESPA violations under 12 U.S.C. § 2605. Ms. Ford maintains that the defendants failed to (a) promptly post payments received from the Representative Plaintiff in a timely manner; (b) timely apply payments to principal and interest on the Representative Plaintiff's accounts; (c) make timely payments of escrow funds for casualty insurance premiums and property taxes; and (d) timely and adequately acknowledge, investigate, and respond to the Representative Plaintiff's qualified written requests for information about the servicing of her loans and escrow accounts. (Compl. ¶98).

First, as Geauga Savings correctly points out, because Section 2605 does not regulate the posting or application of payments, the first two allegations contained in count three fail as a matter of law.  See 12 U.S.C. § 2605; Girgis v. Countrywide Home Loans, Inc., 733 F.Supp.2d 835, 848 (N.D.Ohio 2010) ("[12 U.S.C. § 2605] does not cover the posting or application of payments").

Ms. Ford's second two allegations do fall within the scope of Section 2605's terms however. Section 2605 requires a loan servicer to take certain steps in response

---

[2]     This assumes that the RESPA statute is subject to equitable tolling, since the Sixth Circuit has yet to rule on the issue. See Egerer v. Woodland Realty, Inc., 556 F.3d 415, 422 (6th Cir. 2009). However, federal statutes "are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute." Young v. United States, 535 U.S. 43, 49 (2002).

9

to a borrower's "qualified written request" for information relating to the servicing of a loan. 12 U.S.C. § 2605(e). Section 2605 also requires a loan servicer to make timely payments from an escrow account for taxes, insurance premiums, and other charges as the payments become due.  12 U.S.C. § 2605(g).

Geauga Savings maintains that Ms. Ford's claims relating to these provisions fail as a matter of law, because she did not sufficiently plead damages. When a loan servicer violates Section 2605, the borrower is entitled to "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [Section 2605]." 12 U.S.C. § 2605(f)(1).  "However, remedies for violations of § 2605(e) are conditioned upon actual damages to the borrower." Webb v. Chase Manhattan Mortg. Corp., 2008 WL 2230696, at *14 (S.D.Ohio 28 May 2008); Byrd v. Homecomings Financial Network, 407 F.Supp.2d 937, 946 (N.D.Ill.2005) (finding that a plaintiff who could not show actual damages as required by § 2605(f) fails to state a claim under RESPA as a matter of law). Therefore, to state a plausible claim the plaintiff must allege actual damages arising from the violation. See Wilson v. JPMorgan Chase Bank, NA., 2010 WL 2574032, at *9 (E.D.Cal.25 June 2010) (stating that a showing of actual damages is a pleading requirement).

With respect to damages under Section 2605(e), Ms. Ford alleges that "[a]s both a direct and proximate result of the Defendants' practices regarding charges and fees, the borrowers/consumers are forced into foreclosure."  (Compl., ¶42). Even under a liberal reading of the complaint, however, this does not explain how Ms. Ford was damaged as a result of Geauga Savings' alleged failure to respond to her "qualified

10

written request." Under some circumstance, being "forced into foreclosure" might qualify as a showing of actual damages under Section 2605, but this is not it, because Ms. Ford does not contend that the foreclosure resulted from Geauga Savings' failure to respond to her "qualified written request." Her claim under 12 U.S.C. 2605(e) therefore fails as a matter of law.

Ms. Ford has also failed to sufficiently allege damages relating to her RESPA claim under Section 2605(g), which requires the loan servicer to make timely payments from escrow accounts for casualty insurance, property taxes, and other charges.  Ms. Ford alleges that

> In many instances, as a result of the Defendants' failure to post borrowers'/consumers' mortgage payments to their accounts in a timely manner, the Defendants have made payments late for casualty insurances, property taxes, and other charges from escrow accounts, and borrowers/consumers consequently are assessed unwarranted late fees and related charges.  This practice puts borrowers/consumers into delinquency, creates the need for consumers to pay additional money for taxes and insurance, and harms their credit ratings.  In many instances, the Defendants' failure to pay premiums for casualty insurance has resulted in lapse of coverage and then the imposition of force-placed insurance at higher costs to borrowers/consumers.

(Doc. 1-2, ¶60).  For the purposes of Geauga Savings' motion, the Court assumes this allegation is true and draws all reasonable inferences in favor of Ms. Ford.  Even so, the contingencies built into this generically pleaded paragraph leave only the possibility that Ms. Ford herself was assessed unwarranted late fees and related charges. Whether she was considered delinquent and whether she was required to pay more for taxes and insurance are unknown. Whether her credit rating was harmed and whether her coverage lapsed are likewise only possibilities. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

11

defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (emphasis added).  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. <u>Id.</u> Ms. Ford accordingly does not plead a plausible RESPA claim under 12 U.S.C. § 2605.

### C. Breach of Contract (Count 4)

Ms. Ford states that Geauga Savings was contractually obligated to provide statutorily legal loans and services.  Ms. Ford does not state what "statutorily legal" means exactly, but as the parties appear to understand it, she is referring to compliance with TILA, 15 U.S.C. § 1601, and RESPA, 12 U.S.C. §§ 2605, 2607.  She alleges that Geauga Savings' failure to comply with this obligation constitutes breach of contract.

Geauga Savings contends that this claim should not go forward.  It argues that Ms. Ford failed to properly plead breach of contract because she did not allege that she fulfilled her obligations under the loan agreement.  It maintains that she in fact failed to fulfill her obligations because she did not make payments in accordance with the agreement.  In Ohio, to prove breach of contract the plaintiff must demonstrate: "(1) the existence of a contract, (2) the plaintiff fulfilled [her] contractual obligations, (3) the defendant failed to fulfill its contractual obligations, and (4) the plaintiff incurred damages as a result." <u>Winner Brothers, LLC v. Seitz Elec., Inc.</u>, 182 Ohio App.3d 388, 2009-Ohio-2316, ¶ 31.

Geauga Savings is correct that Ms. Ford has not explicitly pleaded the second element of a breach of contract claim under Ohio law. The Federal Rules do not require that each element of a claim be precisely alleged, but the defendant must have fair

notice of the claim and the grounds upon which it rests. See Twombly, 550 U.S. 544, 555-56, 127 S.Ct. 1955 (2007). "In practice, a complaint ... must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir.1984). Further, "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir.1988). Ms. Ford has not alleged that she fulfilled her contractual obligations, and, viewing the complaint in a light most favorable to her, it cannot be reasonably inferred that she did. It may be fairly assumed, therefore, that she did not fulfill her contractual obligations.

While she does not outright concede a failure to perform, Ms. Ford contends in her opposition brief that she is legally excused from any nonperformance. She maintains that under Ohio law a party who prevents performance on the part of an adverse party cannot take advantage of that nonperformance. In other words, her failure to perform should be excused because Geauga Savings prevented her from performing. She relies on an Ohio Court of Appeals case, in which a landlord refused to accept a tenant's rental payment and then evicted the tenant for nonpayment. See Gary Crim, Inc. v. Rios, 683 N.E.2d 378 (Ohio Ct. App. 1996). The court held that the tenant's nonperformance could not serve as a basis for eviction. Id. at 380.

The principle at work in Rios is inapplicable in this instance. Unlike the landlord in that case, Geauga Savings did not refuse Ms. Ford's tender.  Rather, it appears Ms. Ford simply did not make her payments. Under no reasonable construction of the complaint is it evident that Ms. Ford attempted to make payment but was prevented by

13

Geauga Savings from doing so. Further, it is not readily apparent, and Ms. Ford does not argue, that some other legal excuse for her apparent failure to meet her obligations might exist. For instance, if Ms. Ford had sufficiently alleged that Geauga Savings had materially breached the agreement, her nonperformance might be excused, enabling her breach contract claim to, perhaps, move forward.

As it stands, Ms. Ford has not alleged, and it cannot be reasonably inferred, that she fulfilled her obligations under the agreement. Further, Ms. Ford has alleged no facts that would legally excuse her nonperformance. The breach of contract claim is therefore insufficiently pleaded.

### D. Negligent Misrepresentation (Count 5)

Geauga Savings seeks judgment on the pleadings for Ms. Ford's claim of negligent misrepresentation.  Geauga Savings contends that this claim should not go forward, because Ms. Ford has not alleged the existence of a "special relationship" that would give rise to a duty on the part of Geauga Savings to provide Ms. Ford accurate information.

"A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction."  Hayes v. Computer Associates Intern., Inc., 2003 WL 21478930, at *6 (N.D. Ohio 2003) (citing Picker Intern., Inc. v. Mayo Found., 6 F.Supp.2d 685, 689 (N.D. Ohio 1998).  "This relationship occurs only in 'special' circumstances.  Usually the defendant is a professional (e.g., an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class." Picker Intern., 6 F.Supp.2d at

14

689.  Although the existence of a "special relationship" is not a formal element of the tort, the Ohio Supreme Court has stated that recovery for negligent misrepresentation is limited to "the person or one of a limited group of persons for whose benefit and guidance [the defendant] intends to supply the information or knows that the recipient intends to supply it."  Gutter v. Dow Jones, Inc., 490 N.E.2d 898, 900 (Ohio 1986).

Ms. Ford has alleged no facts that would support the conclusion that the loan agreements between her and Geauga Savings arose from anything other than an ordinary debtor/creditor relationship. "[A] bank and its customers stand at arm's length in negotiating terms and conditions of a loan."  Blon v. Bank One, 35 Ohio St. 3d 98, 101 (1988).  This sort of  relationship does not, by itself, give rise to the existence of a duty necessary to maintain a negligent misrepresentation claim. 425 Beecher, L.L.C. v. Unizan Bank, Natl. Assn., 927 N.E.2d 46, 59 (Ohio App.2010).

The Court rejects Ms. Ford's argument that a duty arose because Geauga Savings provided additional services beyond mere origination of her loans.  She alleges that Geauga Savings "provid[ed] [her] with inaccurate and improper advice as to maximizing the value of [her] respective properties."  (Doc. 1-2, ¶101(b)). Accepting this allegation as true, the Court finds it insufficient to elevate the parties relationship beyond that of ordinary debtor/creditor, because it does not ground the conclusion that Geauga Savings intended to provide the information for Ms. Ford's benefit and guidance in conducting her business. Ms. Ford fails to state a negligent misrepresentation claim.

15

**E. Intentional Misrepresentation and Fraudulent Misrepresentation**

In counts four and six, Ms. Ford alleges claims of intentional misrepresentation and fraudulent misrepresentation.  In Ohio, these torts have the same essential elements.  See Fifth Third Bank v. Cope, 162 Ohio App.3d 838, 848, 835 N.E.2d 779, 788 (Ohio App.2005); Carpenter v. Scherer-Mountain Ins. Agency, 135 Ohio App.3d 316, 327-328, 733 N.E.2d 1196, 1204 (Ohio App.1999). The analysis that follows therefore applies to both claims.

To succeed on either claim, Ms. Ford must prove: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. Id.

Ms. Ford alleges the following misrepresentations/concealments: (a) the defendants failed to advise the plaintiff that the defendants would receive substantial fees in connection with their respective transactions; (b) the defendants provided the plaintiff with inaccurate and improper advice as to maximizing the value of the plaintiff's respective properties; (c) the defendants failed to fully and completely disclose and explain the history and details of the defendants' relationship with all parties to each transaction; (d) the defendants failed to clearly and unambiguously make the plaintiff aware of the consequences of waiver of the right to a jury trial; (e) the defendants

16

knowingly concealed from the plaintiff information which federal statutes and regulations require to be disclosed to her. (Compl. ¶¶101, 108).

Geauga Savings first argues that the allegations which describe a failure to disclose (a, c, d, and e) fail as a matter of law because it had no duty to disclose.  "[A]n intentional misrepresentation claim based upon a concealment of fact will lie only if a duty to disclose exists." Andersons, Inc. v. Consol, Inc., 348 F.3d 496, 509 (6th Cir.2003) (citing Federated Mgmt. Co v. Coopers & Lybrand, 738 N.E.2d 842 (Ohio App.2000). "[A] duty to disclose arises primarily in a situation involving a fiduciary or other similar relationship of trust and confidence." Andersons, 348 F.3d at 509 (quoting Federated Mgmt., 738 N.E.2d at 855). The debtor/creditor relationship, without more, is not a relationship that would give rise to a duty to disclose. See Blon, 35 Ohio St. 3d at 101. As with her negligent misrepresentation claim, Ms. Ford has not alleged any additional facts to support the claim that she and Geauga Savings were engaged in a relationship of trust and confidence. Therefore, because the requisite duty does not exist, her allegations of concealment fail as a matter of law.

As for Ms. Ford's claim of affirmative misrepresentation, that Geauga Savings provided her with inaccurate and improper advice as to maximizing the value of her properties, Geauga Savings maintains that she has not pleaded her claims with the required particularity. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "At a minimum, [the plaintiff] must allege the time, place and contents of the misrepresentations upon which [she] relied." Frank v. Dana Corp.,547 F.3d 564 (6th Cir.2008). In the present case, the allegations in the complaint fall short of the standard. Ms. Ford does not allege when or

17

where the misrepresentations were made.  Nor does she state what the misrepresentations were exactly.  Because she has not pleaded these claims with the requisite particularity, Ms. Ford fails to state an intentional misrepresentation or a fraudulent misrepresentation claim upon which relief can be granted.

### F. Ms. Ford's Claims against New Century

New Century does not join in the present motion and remains unrepresented by counsel. However, all Ms. Ford's claims against New Century are indistinguishable from those against Geauga Savings. While the complaint consistently refers to "the Defendants, individually and collectively," it contains no factual allegation specific to one defendant but not the other. Therefore, given the generalized nature of the allegations, the foregoing analysis applies with equal force to Ms. Ford's claims against New Century. To the extent the Court grants the motion as to the claims against Geauga Savings, it so grants it as to the claims against New Century.

### G. Geauga Savings' Counterclaims

With dismissal of the plaintiff's claims, there remain Geauga Savings' state law counterclaims, which are before the Court pursuant to its supplemental jurisdiction. When a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over claims brought under 28 U.S.C. § 1367(a). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" City of Chicago v. International College of Surgeons, 522 U.S. 156, 173 (1997)(quoting Carnegie Mellon

18

<u>Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988)). The Court has considered and weighed the relevant factors, and it declines to exercise supplemental jurisdiction over Geauga Savings' counterclaims. These claims will therefore be remanded to state court.

**IV. Conclusion**

For the reasons stated above, the motion is granted as to all Ms. Ford's claims against all defendants. Geauga Saving's counterclaims are remanded to Cuyahoga County Court of Common Pleas.

IT IS SO ORDERED.

    /s/ Lesley Wells

UNITED STATES DISTRICT JUDGE

Date: 22 June 2011

19